BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: BLUE CROSS BLUE SHIELD                    MDL No. 2406
ANTITRUST LITIGATION

*Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*, No. 2:20-
cv-12916-TGB-APP (E.D. Mich. 2020)

_____

BLUE CROSS BLUE SHIELD OF MICHIGAN'S RESPONSE
TO ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC'S
<u>MOTION TO VACATE CONDITIONAL TRANSFER ORDER 39</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND AND PROCEDURE ................................................................................ 1

     I.      The BCBS MDL ....................................................................................... 1

     II.     The A4 Litigation ..................................................................................... 3

     III.    The Tag-Along Motion, Conditional Transfer Order, and Motion to Vacate ........ 5

     IV.    A4's Rule 54(b) Motion ........................................................................... 6

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

     I.      A4's Only Outstanding Claims Involve Common Questions of Fact with
              Cases Already in the MDL, Making Transfer Most Efficient. ............................. 8

          A.     *A4's Only Live Claims Are Common to Claims in the MDL.* ..................... 8

          B.     *The Presence of Some Unique Issues Regarding A4's Blues
                Conspiracy Claims Would Not Bar Transfer.* ........................................... 11

     II.     Transferring the *A4* Litigation Will Allow for Efficient and Fair Adjudication
              of A4's Blues Conspiracy Claims and Avoid A4's Complicated Alternatives. .... 13

          A.     *The Provider Track of the MDL Is Not So Far Along as to Preclude
                Transfer.* ........................................................................................... 14

          B.     *The Alternatives to Transfer Do Not Offer Greater Efficiency Than
                Transfer.* ........................................................................................... 16

     III.    The Pending Rule 54(b) Motions are Not a Barrier to Transfer. ........................ 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Conroy v. Fresh Del Monte Produce, Inc.*,
   325 F. Supp. 2d 1049 (N.D. Cal. 2004) ............................................................. 20

*Hastings v. Advanced Corr. Healthcare, Inc.*,
   No. 2:20-CV-00002-JHE, 2020 WL 4583653 (N.D. Ala. Aug. 10, 2020) .............................. 10

*In re 7-Eleven Franchise Antitrust Litig.*,
   358 F. Supp. 286 (J.P.M.L. 1973) ........................................................... 7, 11

*In re A. H. Robins Co., Inc.*,
   438 F. Supp. 942 (J.P.M.L. 1977) ............................................................. 20

*In re Antibiotic Drugs*,
   303 F. Supp. 1056 (J.P.M.L. 1969) ............................................................ 16

*In re Blue Cross Blue Shield Antitrust Litig.*,
   908 F. Supp. 2d 1373 (J.P.M.L. Dec. 12, 2012) ......................................... *passim*

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
   659 F. Supp. 2d 1371 (J.P.M.L. 2009) ........................................................ 15

*In re Cessna 208 Series Aircraft Prod. Liab. Litig.*,
   655 F. Supp. 2d 1379 (J.P.M.L. 2009) ........................................................ 15

*In re Checking Account Overdraft Litig.*,
   818 F. Supp. 2d 1373 (J.P.M.L. 2011) ........................................................ 16

*In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*,
   458 F. Supp. 225 (J.P.M.L. 1978) ........................................................ 7, 18, 19

*In re Data Gen. Corp. Antitrust Litig.*,
   510 F. Supp. 1220 (J.P.M.L. 1979) ........................................................... 18

*In re Eliquis (Apixaban) Prod. Liab. Litig.*,
   No. MDL 2754, 2017 WL 6569794 (J.P.M.L. May 30, 2017) ................................... 7, 19

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   396 F. Supp. 1277 (J.P.M.L. 1975) ............................................................. 7

*In re Gen. Motors LLC Ignition Switch Litig.*,

    No. 2:14-CV-04696-MWF, 2014 WL 5597269 (J.P.M.L. Oct. 22, 2014) .............................. 19

*In re Grain Shipments*,

    319 F. Supp. 533 (J.P.M.L. 1970) ..................................................................................... 7, 11, 13

*In re National Prescription Opiate Litig.*,

    576 F.Supp. 3d 1378 (J.P.M.L. 2021) ...................................................................................... 8

*In re Prudential Ins. Co. of America Sales Practices Litig.*,

    170 F. Supp. 2d 1346 (J.P.M.L. 2001) .............................................................................. 7, 19

*In re Smith Patent Litig.*,

    407 F. Supp. 1403 (J.P.M.L. 1976) .......................................................................................... 13

*In re Vioxx Prod. Liab. Litig.*,

    360 F. Supp. 2d 1352 (J.P.M.L. 2005) ............................................................................. 12, 18

*McCormack v. City of Westland, MI*,

    No. 18-2135, 2019 WL 4757905 (6th Cir. Apr. 15, 2019) ...................................................... 10

**Statutes**

28 U.S.C. § 1407(a) ......................................................................................................................... 10

**Rules**

E.D. Mich. R. 7.1(h) ....................................................................................................................... 10

## INTRODUCTION

Anesthesia Associates of Ann Arbor, PLLC's ("A4") only remaining claims in its Eastern District of Michigan case are mostly identical to those currently at issue in MDL No. 2406 in the Northern District of Alabama (the "MDL" or "MDL 2406").  However, A4 contends that its case has unique issues, the MDL is too advanced, and that its recently filed Rule 54(b) motion pending in the Eastern District of Michigan makes consolidation with the MDL inappropriate.  These points are irrelevant or insignificant.  The Panel Clerk correctly found that A4's case is one of many similar cases appropriate for consolidation in the Northern District of Alabama.

*First*, A4 does not have unique claims or issues because its unique claims have been dismissed.  Regardless, unique issues or discovery are not be a barrier to transfer when cases share a common factual core.  *Second*, the MDL is the obvious place for A4's case, and A4's proposed alternatives will only create unnecessary complications and problems. The MDL is far from being resolved because there is still much to be done and decided on the Provider track, including mediation, dispositive motions, and class certification.  *Third*, the pending Rule 54(b) motions are a non-issue because the Panel has consistently held that either the transferor court or the transferee court can decide pending motions.

It would be efficient and fair to transfer this case to the Northern District of Alabama. Accordingly, A4's motion to vacate the Clerk's conditional transfer order should be denied.

## BACKGROUND AND PROCEDURE

### I.    The BCBS MDL

Dozens of lawsuits across the country have been filed against the Blue Cross Blue Shield Association (the "Association") and the Blue Cross and Blue Shield Plans ("Blue Plans" and, together with the Association, the "Blues") since February 2012, challenging the Blues system's

trademark licensing rules under the Sherman Act.  These actions were centralized, and have since been overseen by the Honorable R. David Proctor as a multidistrict litigation in the Northern District of Alabama.  *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. Dec. 12, 2012) (centralizing cases with a common core of factual allegations that the Association and Blue Plans violated antitrust laws by allocating territories, establishing revenue restrictions, and price-fixing).  Since the MDL's creation, dozens of cases challenging the Blues system's rules have been transferred to the MDL, with the most recent transfer in February of 2022.  Transfer Order, JPML MDL 2406, ECF No. 554.  Several of the actions transferred to the MDL include other types of claims.[1]  Some of the actions name all the Blues as defendants and some name only one Blue as a defendant.[2]

The MDL has two tracks: the "Provider" track and the "Subscriber" track.  The Provider track of the MDL (made up of other healthcare providers, like A4) is currently in mediation.  The Court has yet to rule on the Provider track plaintiffs' motion for class certification.  MDL 2406, ECF No. 2604.  On November 17, 2022, the Court entered an order requesting supplemental briefing on the motion, which is currently ongoing.  MDL 2406, ECF No. 3006.  Nor has the Court ruled on several pending dispositive motions and more are due to be filed after a class certification ruling—those that are "critically dependent on the outcome of class certification."  *See* Modification to Eighth Am. Scheduling Order, MDL 2406, ECF No. 2767.  And on top of these remaining steps, the Provider plaintiffs have consistently suggested that that may seek to reopen

---

[1] *See, e.g.*, *Sosebee v. USAble Mut. Ins. Co.*, Transfer Order, MDL 2406, ECF No. 146 (J.P.M.L. Dec. 28, 2012) (alleging as causes of action the Arkansas Deceptive Trade Practices Act and unjust enrichment).

[2] *See, e.g.*, *Allen v. Blue Cross of Idaho Health Serv., Inc.*, Transfer Order, MDL 2406, ECF No. 145 (J.P.M.L. Dec. 27, 2012) (making claims against only Blue Cross of Idaho Health Service).

discovery if mediation fails before any trial takes place. In the Subscriber track, a class action settlement has been reached, but the settlement is currently on appeal and many subscribers have opted out of the settlement. *See* MDL 2406, ECF No. 2940-44. Hundreds of those opt outs have filed four additional lawsuits which have also been assigned to Judge Proctor in the Northern District of Alabama.[3] Discovery has just commenced on those suits, and they are scheduled to be in pre-trial litigation through 2025. *See Alaska Air Grp. v. Anthem Inc*, No. 2:21-cv-01209 (N.D. Ala.), ECF No. 262.

## II.    The A4 Litigation

A4 filed suit against Blue Cross Blue Shield of Michigan ("BCBSM") in the Eastern District of Michigan on October 29, 2020, bringing claims under the Sherman Act, Clayton Act, and Michigan state laws. *Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*, 2:20-cv-12916-TGB-APP (E.D. Mich. 2020) (hereinafter the "*A4* Litigation" or "*A4 v. BCBSM*").

**A4's Original Complaint.** A4's original complaint principally alleged violations of federal antitrust laws from a purported conspiracy between Michigan hospitals and BCBSM to interfere with A4's relationships with Michigan hospitals. That conspiracy allegedly caused A4 to receive lower reimbursements for anesthesiology services than A4 otherwise would have (the "Hospital Conspiracy"). *See* Compl., JPML MDL 2406, ECF No. 567-6 at ¶¶ 206-212.[4] A4's

---

[3] *Alaska Air Grp., Inc., et al. v. Anthem, Inc., et al.*, 2:21-cv-1209-RDP (N.D. Ala.) (Judge Proctor); *Metro. Transp. Auth., et al. v. Blue Cross Blue Shield of Ala., et al.*, 2:22-cv-00265-RDP (N.D. Ala.) (Judge Proctor); *Bed Bath & Beyond Inc., et al. v. Anthem, Inc. et al.*, 2:22-cv-01256-RDP (N.D. Ala.) (Judge Proctor); *JetBlue Airways Corp., et al. v. Anthem, Inc. et al.*, 2:22-cv-00558-RDP (N.D. Ala.) (Judge Proctor).

[4] For ease of reference and to avoid burdening the Panel with additional exhibits, BCBSM cites to the JPML docket where materials are already filed as exhibits to A4's motion to vacate. *See* JPML MDL 2406, ECF No. 567-1 (the "Motion to Vacate").

original complaint also alleged federal antitrust claims nearly identical as those in the MDL—alleging that BCBSM conspired with other Blues through the licensing agreements with the Association (including related rules regarding geographic service areas, the former "National Best Efforts" rule, and the BlueCard program).    Similarly, such conduct allegedly resulted in A4 receiving a lower reimbursement rate for anesthesiology services (the so-called "Blues Conspiracy" claims).  *Id.* ¶¶ 141-51.  Finally, A4's original complaint contained state law claims which alleged that BCBSM committed various tortious acts in retaliation for A4 seeking a higher reimbursement rate, including interfering with A4's no-poach and non-compete agreements, threatening hospitals, and terminating in-network status for certain of A4's doctors (the "State Law Claims").  *Id.* ¶¶ 80-115.  The Honorable Terrence G. Berg of the Eastern District of Michigan granted BCBSM's motion to dismiss A4's original complaint in full, holding that A4 did not plausibly plead that BCBSM's reimbursement rates were artificially low as a result of an illegal conspiracy with Michigan hospitals.  *See A4 v. BCBSM*, ECF No. 13; *A4 v. BCBSM*, ECF No. 41, at 27-29.

**A4's Proposed Amended Complaint.**  After its original claims were dismissed, A4 sought leave to file an amended complaint.  The proposed amended complaint alleged a greatly expanded version of the Hospital Conspiracy, alleging a decades-long, state-wide scheme through which BCBSM supposedly sought to limit A4's reimbursement rates with all hospitals in Michigan.  *See, e.g.*, *A4 v. BCBSM*, ECF No. 43-2 at 15.  The proposed amended complaint once again included the Blues Conspiracy and State Law Claims as well.  *See, e.g.*, *id.* at 103-09.  Judge Berg denied A4's request to amend the complaint to include A4's implausible allegations relating to the Hospital Conspiracy, finding that A4's proposed amended complaint failed to "address crucial causation issues" and that there were legitimate independent business reasons hospitals would

contract with BCBSM.  Order Den. in Part and Granting in Part Pl.'s Mot. for Leave to File Am. Compl., JPML MDL 2406, ECF No. 567-11.  However, the Court permitted A4 to proceed on its alleged Blues Conspiracy claims, and suggested it may maintain supplemental jurisdiction of related state law claims, if any.  *Id.*

**A4's Amended Complaint.**  Following the Eastern District of Michigan's order, A4 filed an amended complaint.  Am. Compl., JPML MDL 2406, ECF No. 567-12 (amended complaint filed on October 7, 2022).  The amended complaint again contained A4's Blues Conspiracy claims, and made a third attempt to repackage A4's dismissed Hospital Conspiracy under the guise of its State Law Claims.  *Id.* ¶¶ 180-206.  On December 29, 2022, Judge Berg granted BCBSM's partial motion to dismiss and to strike A4's State Law Claims for lack of supplemental jurisdiction and struck the related allegations from the amended complaint, holding that A4 failed to allege a sufficient factual connection between its State Law Claims and any alleged Blues Conspiracy.  *See* JPML MDL 2406, ECF No. 567-14.  Accordingly, at present, A4's only remaining claims are its Blues Conspiracy claims.

**BCBSM's Counterclaim.**  Prior to the dismissal of A4's original complaint, BCBSM filed a counterclaim, which alleged that A4 was operating as a cartel, structured through a web of non-compete clauses with its providers and no-poach clauses with the hospitals.  BCBSM alleged that A4 operated its cartel to illegally increase its prices ("BCBSM's Counterclaim").  *A4 v. BCBSM*, ECF No. 26.  BCBSM's Counterclaim was dismissed by Judge Berg in March of 2022.  *See* JPML MDL 2406, ECF No. 567-10.

## III.   The Tag-Along Motion, Conditional Transfer Order, and Motion to Vacate

Once it was clear that A4's only remaining claims were nearly identical to those in the MDL, BCBSM filed a notice of potential tag-along seeking to transfer this case to the pending

5

MDL given the overlapping allegations.  Notice of Potential Tag-Along Action, JPML MDL 2406, ECF No. 558 ("Tag Notice").

The Clerk of the JPML correctly recognized the similarity between the MDL and *A4* Litigation and issued a Conditional Transfer Order on January 12, 2023, finding that A4's lawsuit "involve[s] questions of fact that are common to the actions previously transferred to the Northern District of Alabama and assigned to Judge Proctor." JPML MDL 2406, ECF No. 559 at 1 (the "CTO").  The CTO further stated that transfer was appropriate "for the reasons stated in the order of December 12, 2012." *Id.*  In the December 12, 2012 order, the Panel found that "centralization of all actions in the Northern District of Alabama will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.  Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings . . . ; and conserve the resources of the parties, their counsel, and the judiciary."  *In re Blue Cross*, 908 F. Supp. 2d at 1376.

A4 filed notice of opposition to the CTO on January 18, 2023 (JPML MDL 2406, ECF No. 561), and filed its Motion to Vacate the CTO on February 2, 2023 (JPML MDL 2406, ECF No. 567-1).

## IV.     A4's Rule 54(b) Motion

Just one day after BCBSM filed the Tag Notice to the MDL, A4 filed a Rule 54(b) motion for partial final judgment in the Eastern District of Michigan, seeking to have its Hospital Conspiracy and State Law Claims certified for immediate appeal.  JPML MDL 2406, ECF No. 567-15.  BCBSM filed its opposition to this motion on January 27, 2023, explaining that A4's attempt to take piecemeal appeals of claims that have been dismissed multiple times should not be permitted.  JPML MDL 2406, ECF No. 567-16.  BCBSM simultaneously filed a conditional counter-motion (which A4 did not oppose), requesting that ***only if*** A4's Rule 54(b) motion is

granted, the dismissal of BCBSM's Counterclaim should also be certified for appeal to promote judicial efficiency.  JPML MDL 2406, ECF No. 567-17.  A4 filed its reply February 3, 2023.  *A4 v. BCBSM*, ECF No. 67.

## LEGAL STANDARD

Transfer of a case to an MDL is appropriate when (1) the case seeking to be transferred shares common questions of fact with the cases already in the MDL, and (2) transfer will promote the just and efficient conduct of the litigation.  *See, e.g.*, *In re Eliquis (Apixaban) Prod. Liab. Litig.*, No. MDL 2754, 2017 WL 6569794, at *1 (J.P.M.L. May 30, 2017).  The transfer of related actions is "essential" in order for them "to be processed as efficiently, expeditiously, and economically as possible."  *In re Grain Shipments*, 319 F. Supp. 533, 535 (J.P.M.L. 1970).  The critical issue in determining whether a case should be transferred is whether "the actions arise from a common factual core"—"transfer does not require a complete identity of parties or factual issues."  *In re Eliquis*, 2017 WL 6569794, at *2.  Rather, the Panel has consistently held that a transferee court can easily create a plan to handle common and non-common claims or issues.  *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 396 F. Supp. 1277, 1279 (J.P.M.L. 1975); *In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973).   Further, pending motions in the transferor court are not impediments to transfer.  *See, e.g.*, *In re Commonwealth Oil/Tesoro Petroleum Securities Litig.*, 458 F. Supp. 225, 230 (J.P.M.L. 1978).  The Panel has routinely found that the transferor court has more than enough time to decide a pending motion prior to transfer, and if the transferor court fails to issue a decision on a pending motion, the transferee court is more than capable of hearing and deciding the motion on its own.  *In re Prudential Ins. Co. of America Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001).

# ARGUMENT

A4's Motion to Vacate the CTO should be denied because the *A4* Litigation involves common questions of fact with the actions previously transferred to MDL 2406, and transfer of the present action will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

## I.   A4's Only Outstanding Claims Involve Common Questions of Fact with Cases Already in the MDL, Making Transfer Most Efficient.

### A.   A4's Only Live Claims Are Common to Claims in the MDL.

A4 admits that the MDL cases have common questions of fact with A4's alleged "Blues Conspiracy" claims—and those are A4's only remaining claims.

Transfer is proper where there are common questions of fact between proceedings. *See In re National Prescription Opiate Litig.*, 576 F. Supp. 3d 1378, 1380 (J.P.M.L. 2021) ("Given the undisputed factual overlap of these actions with the MDL . . . proceedings, transfer is justified . . . ."). As the Clerk of the JPML rightly identified, the facts underpinning A4's only outstanding claims in the *A4* Litigation are common to those in this MDL.[5] *See supra* at 6. Indeed, A4's allegations track—and almost copy verbatim—language from the Consolidated Fourth Amended Provider Complaint in the MDL.[6] *See* Tag Notice at 5-8. A4 does not, and cannot, dispute that

---

[5] Common factual allegations include that: (1) the Blues agreed to allocate geographic markets through their amended license agreement's service areas provisions, (2) the "Best Efforts" rule exists to enforce service area allocations, (3) the BlueCard program is an agreement to fix prices and creates administrative difficulties for providers (including A4), (4) the Blues attempted to monopsonize markets for buying healthcare provider services to lower their costs and increase control over the health insurance market, and (5) the amended license agreement functions to fix prices and boycott healthcare providers outside their service areas. *See* Tag Notice at 5-8.

[6] A4's claims are not only similar to those in the MDL, A4 is actually a member of the putative "Provider" class in the MDL. Pls.' Consolidated Fourth Am. Provider Compl., JPML MDL 2406, ECF No. 567-4 at ¶¶ 617-18 (naming "all healthcare providers . . . in the United States of America" as members of the putative injunctive relief and damages classes).

common questions of fact exist.  Motion to Vacate at 6, 11 (admitting that claims "overlap").
Accordingly, it is undisputed that the *A4* Litigation involves common questions of fact with the
MDL.

To counter this, A4 attempts to mislead the Panel into believing that regardless of the
undisputed common issues transfer would be inefficient because "the A4 litigation involves four
sets of complex claims, only one of which overlaps" with the common factual core of the MDL.
Motion to Vacate at 6.  But A4 fails to mention that three of those "four" sets of claims that A4
asserts are unique (A4's Hospital Conspiracy, A4's State Law Claims, and BCBSM's
Counterclaim) have been ***dismissed***.  *See supra* at 4-5.  And A4 ***admits*** that the "one" set of claims
that remains ***overlaps*** with the MDL.  *See supra* at 5.  Therefore, for A4's argument to work, the
Panel would have to accept A4's lofty assumption that both the Rule 54(b) motions for partial final
judgment currently pending will be granted *and* that the dismissal of A4's claims (as well as the
dismissal of BCBSM's Counterclaim) will be reversed on appeal.  The Panel should consider the
case as it currently stands, and all that remains is the Blues Conspiracy allegations.

A4 makes similarly misleading statements regarding the claims at issue in the *A4* Litigation
throughout its motion.  For example, A4 urges the Panel not to transfer this case to the MDL
because A4's case involves "unique pretrial issues concerning conduct by the parties in 2019,
nearly a decade after the MDL proceedings began."  Motion to Vacate at 1.  But this alleged 2019
conduct in the first instance relates to its dismissed Hospital Conspiracy and State Law Claims.
*See* Motion to Vacate at 3; *see, e.g.*, Order Granting Def.'s Partial Mot. to Dismiss, JPML MDL
2406, ECF No. 567-14 (striking, among others, paragraphs 28-44 of the amended complaint where

A4 alleges tortious conduct by BCBSM occurring in 2019).[7]   Likewise, A4 argues that transfer would disrupt the MDL because the transferee court would have to deal with "pre-trial issues, including discovery" on "claims that differ significantly from the Blues Conspiracy."  Motion to Vacate at 8 (internal quotations omitted).  But the transferee court would currently be under no obligation to decide pre-trial issues or discovery on *any* issues unrelated to the Blues Conspiracy, because the Blues Conspiracy is all that is left.  The dismissed claims should in no way affect the decision to transfer.[8]

Further, even in A4's perfect world where the dismissal of all its claims was reversed, the Panel can always split the claims and send some of the claims back to the Eastern District of Michigan if it becomes appropriate to do so, while still transferring the overlapping Blues Conspiracy claims.  *See* 28 U.S.C. § 1407(a) ("[T]he panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.").  However, since none of the potentially different claims are live, there is no need to split the claims at all.

---

[7] Compare this to A4's remaining claims that have *not* been dismissed, the Blues Conspiracy claims, which, consistent with the MDL, allege conduct going back several decades.  *See* Am. Compl., JPML MDL 2406, ECF No. 567-12 at ¶ 24 ("This conspiracy developed through communications involving BCBSM and other [Blues], dating back at least to the 1980s.").

[8] Additionally, A4 cannot simply seek to have the dismissal of its claims "revised at any time" as it claims.  *See* Motion to Vacate at 8.  A motion for reconsideration under Rule 54(b) requires there be "an intervening change of controlling law, newly available evidence, or a need to correct a clear error or prevent manifest injustice."  *McCormack v. City of Westland, MI*, No. 18-2135, 2019 WL 4757905, at *2 (6th Cir. Apr. 15, 2019); *see also Hastings v. Advanced Corr. Healthcare, Inc.*, No. 2:20-CV-00002-JHE, 2020 WL 4583653, at *3 (N.D. Ala. Aug. 10, 2020) (explaining that a motion for reconsideration is not a vehicle for "present[ing] . . . arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented' before the original decision.").  Therefore, if A4's Rule 54(b) motion for partial final judgment is denied, A4 may not seek to have the dismissal of its claims revised purely because it does not agree with the result.  *Cf.* E.D. Mich. R. 7.1(h) ("Motions for reconsideration of non-final orders are disfavored.").

Finally, A4 attempts to draw a comparison to a case where transfer to the MDL was previously denied, *Women's Recovery Center, LLC v. Anthem Blue Cross Life and Health Insurance Company*, No. 8:20-cv-00102-JWH-ADSx (C.D. Cal.), to support its contention that the (dismissed) claims in the *A4* Litigation "differ significantly" from the MDL.  But *Women's Recovery* does not involve a single antitrust claim.  *Women's Recovery*, No. 8:20-cv-00102-JWH-ADSx, ECF No. 242.  Rather, the crux of the claims in *Women's Recovery* is that the Blues allegedly failed to cover or reimburse for substance abuse treatment that they had previously agreed to reimburse for, not that reimbursement rates for such treatment were artificially low because the Blues conspired to suppress competition.  *See id.*  Therefore, unsurprisingly, in *Women's Recovery* the Panel Clerk did not even issue a conditional transfer order, finding that there were *not* common questions of fact (the opposite of the finding the Clerk made in this case).  *Compare* JPML MDL 2406, ECF No. 557, *with* JPML MDL 2406, ECF No. 559.  Conversely, in A4's case, it is undisputed that the Blues Conspiracy claims directly overlap with the MDL claims.

Accordingly, transfer is appropriate since it is undisputed that the *A4* Litigation involves common questions of fact with the MDL, making consolidated proceedings most efficient.

### B.  The Presence of Some Unique Issues Regarding A4's Blues Conspiracy Claims Would Not Bar Transfer.

As discussed above, A4 has no unique claims because its only claims that have not been dismissed relate to the Blues Conspiracy—which involves almost identical factual and legal issues as the cases currently in the MDL.  However, even if some unique issues were to arise ***within*** A4's Blues Conspiracy claims that have not yet been litigated in the MDL, the JPML has consistently held that does not bar transfer either.  *See, e.g.*, *In re 7-Eleven*, 358 F. Supp. at 287 (". . . [T]he transferee court can easily devise a discovery schedule to accommodate plaintiffs' desire to pursue local discovery not common to the other actions."); *In re Grain Shipments*, 319 F. Supp. at 535.

11

A4 raises supposed factual differences regarding the anesthesiology market in Michigan in an attempt to distinguish its Blues Conspiracy claims from those in the MDL.  Motion to Vacate at 10.  These same types of arguments, however, could be made by every other member of the putative Provider class in the MDL.  Each provider likely has their own particular issues surrounding the type of care and services they provide and the location in which they provide them.  But the purpose of an MDL is to deal with issues that are the same in a more efficient manner, despite the unavoidable presence of some individual issues.  *See In re Vioxx Products Liab. Litig.*, 360 F. Supp. 2d 1352,  1354 (J.P.M.L. 2005) (stating that transfer to an MDL "has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues . . . and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.") (internal citation omitted).  For example, in *In re Vioxx Products Liab.*, the Panel granted transfer despite plaintiffs' argument that "individual questions of fact in their actions predominate[d] over any common questions of fact and/or that discovery [was] already underway," stating that it was "confident in the transferee judge's ability to streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims."  *Id.* at 1353-54.  The supposed particularities specific to A4 in its Blues Conspiracy claims do not bar transfer.

The same is true for any unique issues that may ultimately be raised by BCBSM in the course of litigating A4's Blues Conspiracy claims.  *See* Motion to Vacate at 10-11.  For example, if BCBSM asserts a defense against A4 not yet seen in the MDL, such as alternative causation for A4's alleged antitrust injuries, this is not a barrier to transfer.  Nor are any of BCBSM's affirmative defenses listed in its answer a barrier to transfer (to the extent they actually do differ from the

MDL, which is debatable).  *See In re Smith Patent Litig.*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976) (stating that specific issues arising from defendants' individual defenses did not bar transfer, even if discovery unique to each defendant was required, because all the actions shared common questions of fact regarding plaintiff's conduct).  Nor is it shocking that if this action remains in the Eastern District of Michigan with A4 as the only plaintiff BCBSM might seek unique discovery, or that such discovery may not have been sought in a putative class action with over one million putative class members in the Provider class alone.

Therefore, transfer should not be denied simply because there may be some unique discovery within the overlapping claims.  It will still be far more efficient for A4's claims to be considered in the MDL.  *See In re Grain Shipments*, 319 F. Supp. at 535 ("[T]he transfer of these cases to a single court is essential if these related actions are to be processed efficiently, expeditiously, and economically as possible.").

## II.   Transferring the *A4* Litigation Will Allow for Efficient and Fair Adjudication of A4's Blues Conspiracy Claims and Avoid A4's Complicated Alternatives.

The MDL is the natural place for A4's Blues Conspiracy claims to be litigated.  It will be most efficient for these claims to be with Judge Proctor in the Northern District of Alabama, who has more than a decade of experience with the alleged Blues Conspiracy, including its complex factual and legal background.  *See* Tag Notice at 9-10; *In re Blue Cross*, 908 F. Supp. 2d at 1376. Transferring the *A4* Litigation will also avoid duplicative discovery, which is not a hypothetical risk but very real.  *See* Tag Notice at 11 (discussing A4's existing discovery requests to BCBSM). Rather than burdening the parties with duplicative discovery in the Eastern District of Michigan and the MDL—and potentially burdening the Eastern District of Michigan and Northern District of Alabama with duplicative disputes—transferring the *A4* Litigation will allow for coordinated discovery that preserves the resources of all participants.  Further, given the close similarities

between the *A4* Litigation and the MDL, denying transfer would create a tangible risk of inconsistent or conflicting rulings between the Eastern District of Michigan and Northern District of Alabama on the common factual and legal questions at issue. *See id.* at 9-10.  Therefore, transferring the *A4* Litigation to the MDL will "conserve the resources of the parties, their counsel, and the judiciary" and allow for a fair and efficient process for resolving A4's claims. *See In re Blue Cross*, 908 F. Supp. 2d at 1376.

Despite the clear benefits of transfer, A4 claims that transfer would "immediately bog down the transferee court" and states multiple times that transfer would cause "delay and disruption" in the MDL.  Motion to Vacate at 1.  This is not the case.

### A.  The Provider Track of the MDL Is Not So Far Along as to Preclude Transfer.

The MDL here is not at a stage of maturity such that transfer would be inappropriate. Multiple rounds of dispositive motions still must be briefed and/or ruled upon, briefing is ongoing for class certification, and although mediation currently is ongoing, Provider plaintiffs have indicated that they might seek additional discovery. *See supra* at 2-3.  Therefore, unlike the cases A4 attempts to rely on, here the advantages of transfer easily outweigh the disadvantages.

Most cases that share common issues of fact, as is the case here, are transferred because it is plainly most efficient to handle common issues in a single court.  The MDL would have to be on the brink of completion for such efficiency to be lost.  But the Provider track is not there.  *See supra* at 2-3.  There is significant work being done in the Provider track of the MDL, including: (1) the ongoing mediation; (2) the possibility of additional discovery;[9] (3) several pending

---

[9] If Provider plaintiffs seek to (and successfully) reopen discovery and A4 is not part of the MDL, A4 and the MDL plaintiffs may be conducting similar discovery in two courts at nearly the same time, which is not an efficient use of the parties or courts' resources.  Additionally, the Subscriber Settlement opt outs, which are just now beginning discovery in the same district as the MDL before

dispositive motions; (4) Provider plaintiffs' motion for class certification, which is still being briefed; and (5) a post-class certification decision round of dispositive motion practice.  *See supra* at 2-3.  The Provider track of the MDL is not nearing completion, and it is certainly not close enough to completion to preclude transfer of A4's case.[10]

In its motion, A4 cites a handful of cases where transfer was denied in support of its claim that the MDL is too advanced to absorb another tag-along case, but in each of these cases, the MDL at issue was materially more advanced than the MDL here.  In *In re: Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, transfer was denied because "only twelve" of the "over 820 cases" that had been transferred to that MDL remained pending in the transferee court.  659 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009).  That is not the case here, where ***none*** of the cases transferred to the Provider track of the MDL have been remanded back to their home districts.  Indeed, far from counseling against transfer, the Panel's decision in *In re Bridgestone/Firestone,* actually supports transfer here because the Panel's December 2009 decision in that case was made after the Panel had "transferred a case [one month prior] in November of [that] year," at which point that MDL was plainly still more advanced than the MDL here.  *Id.*  A4 also cites *In re Cessna 208 Series Aircraft Products Liab. Litig.*, but in that case, the transferee Judge had herself already concluded that "pretrial proceedings as to common issues . . . [were] nearly complete."  655 F. Supp. 2d 1379 (J.P.M.L. 2009).  Here, Judge Proctor has made no such declaration, and at a status conference in

---

the same judge, provide yet another reason that the *A4* Litigation would be more efficiently dealt with in the MDL.

[10] In fact, this Panel transferred a case to the MDL in February of last year (*see supra* at 2), at which point the parties were engaged in the same mediation that is taking place now.  The only change since then is the Court ruled on two summary judgment motions as part of the first phase of dispositive motion briefing and ordered supplemental briefing on Provider plaintiffs' motion for class certification.  *See* MDL ECF Nos. 2933-34, 3006.

November 2022, he explained to the parties that "the best thing for the case on the litigation track and the best thing for the case on any potential settlement track is to keep moving." Tr. of Proceedings Held on Nov. 30, 2022, MDL 2406, ECF No. 3010 at 13.[11]

In short, the MDL is not so advanced that transfer of the *A4* Litigation would be inappropriate or inefficient.

### B. The Alternatives to Transfer Do Not Offer Greater Efficiency Than Transfer.

Transfer to the MDL would be much more efficient than A4's proposed alternatives because everything A4 needs—the parties, the discovery, the pre-trial rulings—is in the MDL, not in Michigan.

First, because of A4's flawed contention that the MDL is over when in fact work in the Provider track remains ongoing, the Eastern District of Michigan cannot simply rely on the ability to take "useful guidance" from the MDL Court's decisions. Motion to Vacate at 15. As noted above, there are many critical motions still to be briefed and ruled upon in the Provider track of the MDL. *See supra* at 2-3, 15-16. There is no guarantee that the *A4* Litigation, which is a two-party case with fewer procedural hurdles, will not move significantly more quickly than the MDL and could potentially surpass the MDL on certain issues, making it difficult or impossible to take "useful guidance" from the MDL. Further, if discovery is reopened in the Provider track of the MDL while discovery is also taking place in the *A4* Litigation, there would be a high risk of duplicative issues being resolved in different ways, which strongly weighs in favor of transfer. *See In re Antibiotic Drugs*, 303 F. Supp. 1056, 1057-58 (J.P.M.L. 1969) (denying motion to vacate

---

[11] Similarly, Plaintiffs cite *In re Checking Account Overdraft Litig.*, 818 F. Supp. 2d 1373 (J.P.M.L. 2011). But in that case, the transferee court had already ruled on a motion for class certification and set "each action . . . for trial." *Id.* at 1373. The Court here has done neither.

conditional transfer order because "transfer of all such cases to a single district" would "eliminate the possibility of conflicting or overlapping" litigations).

And A4 grossly overestimates the ease with which it may avail itself of "the thousands of documents produced and multiple depositions taken in the MDL." Motion to Vacate at 14 (citation omitted). A4's solution, instead of involving all the other parties implicated in its Blues Conspiracy allegations, is to "obtain copies of discovery completed in the MDL" instead of collecting new discovery from the Blues. Motion to Vacate at 15. But A4 is wrong to think that it can simply "obtain copies of discovery completed in the MDL proceedings" from BCBSM. Motion to Vacate at 14 (citation omitted). Given the sensitive nature of the MDL litigation— which includes millions of pages of productions from 35 other defendants and dozens of third parties, much of which is highly sensitive, protected under HIPAA, and/or commercially sensitive proprietary information—discovery collected in the MDL is governed, and access is restricted by, a strict protective order that will prevent BCBSM from producing much of it. Protective Order, MDL 2406, ECF No. 145. The notion that BCBSM could simply turn over that entire record, even if it wanted to, is false. Discovery in the MDL was also collected from myriad parties and third parties that are not party to A4's case, which means the MDL protective order also precludes BCBSM from producing that discovery to A4. *See id.* at 12-21.

To combat the apparent inefficiency in continuing to litigate alone, A4 asserts that it "has not sought any discovery from any parties to the MDL" thus far and that it "has no plans to subpoena new discovery from the other parties to the MDL" in the future. Motion to Vacate at 15. But even if A4's "plans" are true, it will be more efficient for discovery on the same issues to be overseen by the same court, whether it is from one party or many.

17

None of A4's proposed alternatives come close to being as efficient, let alone more efficient, than transfer to the MDL.  Therefore, the *A4* Litigation should be transferred.

### III.    The Pending Rule 54(b) Motions are Not a Barrier to Transfer.

Finally, A4's pending Rule 54(b) motion for partial final judgment and BCBSM's contingent counter-motion are not a barrier to transfer.  As the Panel has consistently held, a pending motion in the transferor court is not a sufficient basis to avoid transfer to the MDL.  *See, e.g.*, *In re Vioxx*, 360 F. Supp. 2d at 1354 ("The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in [the MDL]."); *In re Commonwealth Oil*, 458 F. Supp. at 230 (rejecting defendant's argument that transfer should be delayed due to a fully briefed motion to dismiss pending in the transferor court, because "[t]hese motions can be presented to and decided by the transferee judge following transfer."); *In re Data Gen. Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227 (J.P.M.L. 1979) ("We see no reason to delay transfer because of the pendency of a motion to dismiss.").

A4 makes several incorrect contentions regarding the impact of the Rule 54(b) motions.  First, A4 mischaracterizes BCBSM's pending Rule 54(b) counter-motion as an impediment to transfer.  Motion to Vacate at 6-8.  BCBSM's countermotion is ***purely conditional*** on A4's Rule 54(b) motion being granted, which BCBSM has ***opposed***.  S*ee* Def.'s Resp. in Opp. to Pl.'s Mot. for Partial Final J., *A4 v. BCBSM*, ECF No. 65 at 2 ("A4's motion for partial judgment should be denied. If the Court does not deny A4's motion, then for the sake of completeness it must similarly certify BCBSM's dismissed counterclaim to be considered concurrently with A4's appeal.").  Therefore, the intention of BCBSM's combined opposition and counter-motion is that ***no claims*** should be certified for appeal.  Thus, BCBSM's counter-motion has no independent impact separate from A4's Rule 54(b) motion.

Second, A4 assumes that the Eastern District of Michigan will not decide the pending Rule 54(b) motions prior to a decision by the Panel on this Motion to Vacate, therefore placing the motions before the Northern District of Alabama.  Motion to Vacate at 7-8.  However, the Rule 54(b) motions were fully briefed as of February 3, 2023, and the motions will be decided on the papers, without argument. S*ee* Notice of Determination of Mot. Without Oral Arg., *A4 v. BCBSM*, ECF No. 68. The Eastern District of Michigan has ample time to rule on the pending motions before a transfer is finalized if it wishes to do so.   *See In re Eliquis*, 2017 WL 6569794, at *1 n.2 ("[T]he pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so."); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 2:14-CV-04696-MWF, 2014 WL 5597269, at *1 n.2 (J.P.M.L. Oct. 22, 2014) (same); *In re Prudential Ins. Co.*, 170 F. Supp. 2d at 1347-48 ("[Transferor] courts wishing to address such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on them, and the process of 1407 transfer in [the MDL] can continue without any unnecessary interruption or delay.").

Moreover, if a transfer occurs before a decision is made on the pending motions, the transferee court, the Northern District of Alabama, is fully capable of deciding the motions as well. *See, e.g.*, *In re Commonwealth Oil*, 458 F. Supp. at 230 (stating that pending "motions can be presented to and decided by the transferee judge following transfer.").   A4 contends that the transferor judge, Judge Berg, is in a "better position" to decide the pending Rule 54(b) motions

because Judge Berg is "readily familiar" with the issues of the case.[12]   Motion to Vacate at 8. Although Judge Berg naturally has familiarity with the history of a case on his docket, the *A4* Litigation has just finished the motion to dismiss phase—there is not an expansive record or exceedingly complex procedural history that the transferee court would have to get up to speed on. Further, "it is not peculiar for a federal district judge to be faced with applying law of a state other than the one wherein his or her district is located, and thus the presence of foreign state law in multidistrict litigation is of no particular consequence." *In re A. H. Robins Co., Inc.*, 438 F. Supp. 942, 943 (J.P.M.L. 1977).   There is no reason the transferee court could not decide the pending motions.

Finally, A4 manufactured the issue it now complains of by filing its Rule 54(b) motion after it was on notice that BCBSM was considering tagging the case to the MDL.  *See, e.g.*, Def.'s Mot. to Dismiss, *A4 v. BCBSM*, ECF No. 57 at 1 n.1 (stating that BCBSM was considering tagging).  A4 cannot now use the excuse that there is a pending motion to avoid transfer.

Therefore, the pending Rule 54(b) motions are not an impediment to transfer.

## CONCLUSION

For the forgoing reasons, A4's Motion to Vacate should be denied and the *A4* Litigation should be transferred to MDL 2406.

---

[12] A4 supports this contention by citing *Conroy v. Fresh Del Monte Produce, Inc.*, a California district court decision in which the court denied a stay of proceedings while transfer to a multidistrict litigation was pending.  325 F. Supp. 2d 1049 (N.D. Cal. 2004).  This case is irrelevant because it is not a decision by the Panel determining whether the case should be transferred to a multidistrict litigation, but rather is a district court determining whether a motion to stay should be granted while transfer to a multidistrict litigation was pending.

Dated: February 23, 2023

Respectfully submitted,

SHEARMAN & STERLING LLP
By: */s/ Todd M. Stenerson*
Todd M. Stenerson (P51953)
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

Rachel Mossman Zieminski (*admitted in E.D. Mich.*, Texas Bar 24131967)
2601 Olive Street, Suite 1700
Dallas, TX 75201
(214) 271-5777

BODMAN PLC
By: */s/ Thomas J. Rheaume*
Thomas J. Rheaume, Jr,
Sarah L. Cylkowski
Alexandra C. Markel
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
trhaume@bodmanlaw.com

*Attorneys for Defendant Blue Cross Blue Shield of Michigan*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2023, I caused the foregoing document to be served via ECF on all attorneys of record. I declare under penalty of perjury that the foregoing statements are true and correct.

By: _/s/ Todd M. Stenerson_
Todd M. Stenerson
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

_Attorneys for Defendant BCBSM_